# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF OKLAHOMA

AARON P. CHUCULATE,      )
         )
        Plaintiff,      )
         )
      v.      )      Case No. CIV-13-398-SPS
         )
CAROLYN W. COLVIN,      )
Acting Commissioner of the Social      )
Security Administration,      )
         )
        Defendant.      )

## OPINION AND ORDER

The claimant Aaron P. Chuculate requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). He appeals the Commissioner's decision and asserts that the Administrative Law Judge ("ALJ") erred in determining he was not disabled. For the reasons discussed below, the Commissioner's decision is hereby REVERSED and the case is REMANDED to the ALJ for further proceedings.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work

which exists in the national economy[.]" *Id*. § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938); *see also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Sec'y of Health & Human Svcs.*, 933 F.2d 799, 800 (10th Cir. 1991). But the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts from its weight."

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity. Step two requires the claimant to establish that he has a medically severe impairment (or combination of impairments) that significantly limits his ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or his impairment *is not* medically severe, disability benefits are denied. If he *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, he is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that he lacks the residual functional capacity (RFC) to return to his past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given his age, education, work experience, and RFC. Disability benefits are denied if the claimant can return to any of his past relevant work or if his RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

*Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

## Claimant's Background

The claimant was born January 19, 1971, and was forty years old at the time of the administrative hearing (Tr. 27). He completed the eleventh grade, and has worked as a fast food worker, backhoe operator, and temporary laborer (Tr. 47, 150). The claimant alleges he has been unable to work since August 15, 2005, due to mental illness (Tr. 145).

## Procedural History

The claimant applied for supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85, on July 26, 2010. His application was denied. ALJ John W. Belcher held an administrative hearing and ALJ David W. Engel, writing for ALJ Belcher, determined that the claimant was not disabled in a written opinion dated November 18, 2011 (Tr. 9-21). The Appeals Council denied review, so the ALJ's written opinion is the Commissioner's final decision for purposes of this appeal. *See* 20 C.F.R. § 416.1481.

## Decision of the Administrative Law Judge

The ALJ made his decision at steps four and five of the sequential evaluation. He found that the claimant had the residual functional capacity (RFC) to perform medium work as defined in 20 C.F.R. § 416.967(c), *i. e.*, he could lift/carry fifty pounds occasionally and twenty-five pounds frequently, stand/walk for six hours in an eight-hour workday, and sit for six to eight hours in an eight-hour day. Additionally, the ALJ found that the claimant could do simple work in habituated work and object oriented settings,

could have superficial contact with co-workers and supervisors and no contact with the public, could not work in close proximity to co-workers, and supervision should be simple, direct, and concrete (Tr. 13). The ALJ concluded that the claimant was not disabled because he could return to his past relevant work as a temporary laborer (Tr. 19). Alternatively, he concluded that the claimant was not disabled because there was work he could perform in the regional and national economies, *e. g.*, warehouse worker, hand packer, and press machine operator (Tr. 20).

## Review

The claimant argues that the ALJ erred: (i) by failing to properly evaluate his mental impairments at steps four and five; (ii) by failing to evaluate the opinion of his therapist, Ms. Johna Madden, LPC; and (ii) by failing to properly assess his credibility. The Court finds that the ALJ *did fail* to properly evaluate the opinion of the claimant's therapist (as well as third party evidence from the claimant's mother, which supported the opinion), and the decision of the Commissioner must therefore be reversed and the case remanded for further proceedings.

The ALJ found that the claimant had the severe impairments of degenerative disc disease, schizophrenia, mood disorder, and personality disorder (Tr. 11). As to mental impairments, the claimant has a history of incarcerations, but records from the Oklahoma Department of Corrections indicate that he received medication management treatment for schizoaffective disorder (Tr. 331). The claimant was assessed at Bill Willis Community Mental Health and Substance Abuse Center on June 26, 2009, and given an Axis I diagnosis of Schizophrenia residual type, social phobia, and polysubstance

dependence remission in a controlled environment, as well as assessed a Global Assessment of Functioning (GAF) score of 51. (Tr. 961-966). Further evaluation in January 2011 continued to confirm the Axis I diagnoses of residual schizophrenia, unspecified condition; social phobia; and combinations of drug dependence excluding opioid type drugs; as well as an Axis II notation of observation of other suspected mental conditions (Tr. 952). Notes from the physician at Bill Willis indicate a diagnosis of polysubstance dependence, schizophrenia residual type, social phobia by history, and mood disorder NOS secondary to childhood trauma and polysubstance abuse (Tr. 374).

On August 1, 2009, Beth Jeffries, Ph.D. conducted a mental status examination of the claimant (Tr. 295). She did not believed the claimant met the criteria for the previous diagnosis of schizoaffective disorder, and assessed him with polysubstance dependence, noting that he socialized well at the exam, did not report delusions or hallucinations, and his history of methamphetamine use could account for symptoms (Tr. 297).

On October 3, 2011, Johna Madden, LPC, completed a Medical Source Statement regarding the claimant's mental impairments, assessing him with a GAF of 60 (Tr. 1040). She indicated that his signs and symptoms included: sleep disturbance, mood disturbance, emotional lability, delusions or hallucinations, anhedonia or pervasive loss of interests, feelings of guilt/worthlessness, difficulty thinking or concentrating, suicidal ideation, social withdrawal or isolation, obsessions or compulsions, intrusive recollections of a traumatic experience, persistent irrational fears, generalized persistent anxiety, and hostility and irritability (Tr. 1040). As to clinical findings, she referred to additional documentation from CREOKS and stated that audiovisual hallucinations,

paranoia, depression, fear, and withdrawing from others would interfere every day of the week (Tr. 1041). She indicated that his ability to understand, remember, and carry out instructions was affected by his impairments, and that he had marked loss in the ability to understand and remember detailed instructions, carry out detailed instructions, maintain attention and concentration for extended periods, maintain regular attendance and be punctual, complete a normal workday or workweek without interruptions from psychologically based symptoms, and perform at a consistent pace without an unreasonable number and length of rest periods (Tr. 1042). Additionally, she indicated that the claimant had moderate loss in the ability to sustain an ordinary routine without special supervision and make simple work-related decisions (Tr. 1042). She further agreed that his ability to respond appropriately to supervision, coworkers, and work pressure in a work environment was affected by his impairments, and that he had an extreme loss in the ability to use public transportation, as well as marked loss in the ability to accept instructions and respond appropriately to criticism from supervisors, maintain socially appropriate behavior, respond appropriately to changes in a routine work setting, travel in unfamiliar places, and set realistic goals or make plans independently of others (Tr. 1043). She also indicated he had moderate losses in the ability to interact appropriately with the public, get along with coworkers and peers without unduly distracting them or exhibiting behavioral extremes, and be aware of normal hazards and take appropriate precautions (Tr. 1043). Finally, she indicated that the claimant had moderate limitations in activities of daily living, marked difficulties in maintaining social functioning, and often had deficiencies of concentration, persistence,

or pace, and repeated episodes of decompensation (Tr. 1043-1044).  She stated that his impairments had existed and persisted since at least the 2009 treatment documentation from Bill Willis (Tr. 1044).

On August 20, 2009, state reviewing physician Burnard Pearce, Ph.D., completed a Pychiatric Review Technique, finding the claimant had moderate difficulties in maintaining social functioning, mild limitations otherwise, and insufficient evidence regarding episodes of decompensation (Tr. 314).  He also completed a mental RFC assessment, finding the claimant moderately limited in the ability to understand and remember detailed instructions and carry out detailed instructions, and markedly limited in the ability to interact appropriately with the general public (Tr. 299-300).  He stated that the claimant could perform simple and some complex tasks, could relate to others on a superficial work basis, could adapt to a work situation, and should avoid working with the general public (Tr. 301).  On October 4, 2010, state agency physician Dr. Carolyn Goodrich, Ph.D., completed a Psychiatric Review Technique (PRT) form indicating that the claimant had moderate limitations in the three areas of functional limitation, and no episodes of decompensation (Tr. 395).  She further indicated in a mental RFC assessment that the claimant was markedly limited in the ability to understand and remember detailed instructions, carry out detailed instructions, and interact appropriately with the general public (Tr. 400-401).  She listed essentially the same four statements as Dr. Pearce, except she limited the claimant to only simple tasks with routine supervision (Tr. 402).

The claimant's mother Sharon Ann Chuculate prepared a Third Party Function Report on August 14, 2010 (Tr. 238-245).  She indicated the claimant struggles around a

lot of people, is unable to sleep without medication, and also occasionally requires reminders to take his medications (Tr. 238-240). She indicated that he attends church weekly and reads his Bible and devotional material, and watches television, but that he has difficulty getting along with others because he feels they are judging him (Tr. 241-243). She also indicated that his attention span varied, that the claimant could follow written instructions if they were "not complicated," and that he struggles with believing that people are out to get him (Tr. 243-244).

The claimant testified at the administrative hearing that he lives with his mother, that he longer has a driver's license because it was suspended following a DUI, and that he is a recipient of food stamps (Tr. 27-28). He testified as to his past use of drugs and alcohol, but that he was currently sober (Tr. 31-35). His attorney noted his history of two prior suicide attempts, and the claimant testified that he struggles with suicidal ideation on a regular basis, indicating that he believes himself to be a burden on others and that he suffers from auditory hallucinations and violent thoughts (Tr. 36-37). He stated that he had left his most recent job at Sonic Drive-Thru because he did not trust the people he worked with and co-workers were using illegal drugs, which affected him as a recovering addict (Tr. 38-39). They discussed Ms. Madden's assessment, and he confirmed that he struggles with nightmares and panic attacks that occur when he gets frustrated on a daily basis, as well as difficulties concentrating (Tr. 42-43). He indicated that he generally only interacts with his mother and son, who live with him, as well as nephews who occasionally visit (Tr. 44). He further stated that he had stopped going to church because he had "just about given up" (Tr. 45).

In his written opinion, the ALJ indicated he was giving significant weight to the opinions of Dr. Goodrich and Dr. Pearce because they were "experts in the Social Security program" and their opinions were "well supported by the objective medical evidence of record" (Tr. 19). The ALJ did not, however, give credence to the "other source" evidence in the case, *i. e.*, the opinions expressed by counselor Ms. Madden or the testimony and Third Party Function Report of the claimant's mother. The ALJ declined to give Ms. Madden's opinion significant weight because she had only seen the claimant once at the time she completed the form and twice at the time of the hearing, and was not an "acceptable source" (Tr. 19). The ALJ wholly ignored the evidence from Ms. Chuculate.

Social Security regulations provide for the proper consideration of "other source" opinions such as that provided by Ms. Madden herein. *See, e. g., Frantz v. Astrue*, 509 F.3d 1299, 1302 (10th Cir. 2007) (noting that other source opinions should be evaluated with the relevant evidence "on key issues such as impairment severity and functional effects" under the factors in 20 C.F.R. §§ 404.1527, 416.927), *quoting* Soc. Sec. Rul. 06-03p, 2006 WL 2329939 at *1 (Aug. 9, 2006). *See also* Soc. Sec. Rul. 06-03p, 2006 WL 2329939 at *6 ("[T]he adjudicator generally should explain the weight given to opinions from these 'other sources,' or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case."). The factors for evaluating opinion evidence from "other sources" include: (i) the length of the relationship and frequency of contact; (ii) whether the opinion is consistent

with other evidence; (iii) the extent the source provides relevant supporting evidence; (iv) how well the source's opinion is explained; (v) whether claimant's impairment is related to a source's specialty or area of expertise; and (vi) any other supporting or refuting factors. *See* Soc. Sec. Rul. 06-03p at *4-5; 20 C.F.R. §§ 404.1527(d), 416.927(d). The ALJ only referenced the first factor in this situation, and wholly disregarded that Ms. Madden had several years of records from the mental health agency (specifically indicating that she had reviewed them in making her assessment) when she provided her opinion, as well disregarding each of the other relevant factors. It is therefore unclear whether he considered any of them. *See, e. g., Anderson v. Astrue*, 319 Fed. Appx. 712, 718 (10th Cir. 2009) ("Although the ALJ's decision need not include an *explicit discussion* of each factor, the record must reflect that the ALJ *considered* every factor in the weight calculation.") [emphasis in original]. Nor did the ALJ otherwise discuss Ms. Madden's opinion in relation to the other evidence of record, including Dr. Jeffries' opinion, opting instead to simply reject it in favor of an opinion by a state agency physician who neither examined nor treated the claimant. *See, e. g., Clifton*, 79 F.3d at 1010 ("[I]n addition to discussing the evidence supporting his decision, the ALJ also must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects."), *citing Vincent ex rel. Vincent v. Heckler*, 739 F.3d 1393, 1394-1395 (9th Cir. 1984).

Social Security Ruling 06-03p also provides the standards for evaluation of third party evidence such as that provided by the claimant's mother Ms. Chuculate. Other source evidence, such as functional reports or testimony from spouses, parents, friends,

and neighbors, should be evaluated by considering the following factors: (i) the nature and extent of the relationship; (ii) whether the evidence is consistent with other evidence; and (iii) any other factors that tend to support or refute the evidence. Soc. Sec. Rul. 06-03p, 2006 WL 2329939, at *6. Here, not only did the ALJ wholly fail to apply these standards to the evidence provided by Ms. Chuculate; the ALJ simply ignored it entirely in his written opinion. Because this evidence provided at least some support for the observations made by Ms. Madden, the ALJ should have given it proper consideration instead of ignoring it.

Because the ALJ failed to properly consider the "other source" evidence provided by Ms. Madden and the claimant's mother Ms. Chuculate, the decision of the Commissioner must be reversed and the case remanded to the ALJ for further analysis. If such analysis results in any changes to the claimant's RFC, the ALJ should re-determine what work the claimant can perform, if any, and ultimately whether he is disabled.

## Conclusion

In summary, the Court FINDS that correct legal standards were not applied by the ALJ, and the Commissioner's decision is therefore not supported by substantial evidence. The Commissioner's decision is accordingly REVERSED and the case REMANDED for further proceedings consistent herewith.

**DATED** this 17th day of March, 2015.

_____
**STEVEN P. SHREDER**
**UNITED STATES MAGISTRATE JUDGE**

-11-